in Number 2011-5090, WELCH v. United States. May it please the Court, the decision in the Court of Claims in this case would be dramatic change in the prior authorities in this area. In my practice I often have people come to me and say the IRS is trying to collect some money, I never got a notice. I patiently explained to them that the point is not whether you got a notice, the point is whether the IRS prepared and mailed one, and if they did it doesn't matter. But then I asked the IRS for proof. In the vast majority of cases, I get back from the IRS exactly what the IRS manual and the court cases say, forgive me, a copy of the notice, a copy of the 3877. Right, but there are plenty of cases that say that there are other ways that they can satisfy that burden. The cases often say that, but virtually no case doesn't involve the 3877. They may involve a 3877 that has a piece of information missing, that's not initialed in the right place, that has some gap in it, but we've been scouring the authority. There are virtually no cases. There are two in California. The Laguna District Office in California made a special arrangement with the Post Office to There are a couple of cases that refer to certificates of mailing, but don't use the term 3877, but provide the same information for a 3877. The information in this case is dramatically different than that required by a 3877. Well, are you asking for us to issue a rule that absent a 3877 are virtual equivalent? There's no, the government can't succeed. I'm trying to get at what you're asking. No, that's fair. I'm saying that the information created by a 3877 is the information required to prove mailing. That can be provided in different ways, but that's the level of information required. In this case, there's nothing resembling that. Let me back away from the specific facts of this case for a minute and just understand the procedural posture that we have here. The trial judge decided this is a matter technically of summary judgment, but I take it that everyone had put in all the evidence they were going to put in. Both sides had put in summary judgment motions after discovery was completed. And all the evidence that you had on this issue. I mean, this isn't a case, I take it, in which there's a summary judgment proceeding, but there'd be a whole lot of new evidence that would be presented at a trial if a trial were held. No, I think both parties understood that all of the evidence available to both sides was in the record. So I take it then when the judge finds at the end of his opinion that I find that there was a mailing in this case, that that constitutes, in effect, a finding of fact, right? I mean, it's not simply a finding that there's no reasonable basis on which to dispute the mailing. It's finding of actual fact. You made a finding based on the record. Right. My understanding is this court reviews those findings de novo. And the facts, but the facts are not controversial. De novo. That's the question, really. I mean, is that a finding of fact that this court would treat as subject to clear-error review? It's not a situation where the Court of Claims judge heard testimony and determined whether the testimony was credible. I understand that, but . . . You have all of the information that the Court of Claims judge had. So what you're saying is that while he said it that way, what he was really finding is that based on the undisputed facts, that this is sufficient to satisfy a mailing and that no reasonable juror could conclude otherwise. He made a decision based upon the same pieces of paper that you have. All he had was the pieces of paper. Did anyone try to find out who it was that signed the certified return receipt? We believe it was somebody who worked in the . . . it wasn't in the record, but it was somebody who worked in the building where the . . . So it was the doorman, basically. Or somebody in the mail room. Right, but in terms of the facts that were relied upon by the judge below, we have a statement in the sworn affidavit by the woman who was in charge of this procedure in the office saying, I got these two green receipt cards here, and I'm telling you there's no reason on earth why they would be there except for the fact that they had been connected up to a notice of deficiency. That's probably true, but let me . . . We have to accept that as true. Let me . . . I'm not disputing that. The affid . . . the declaration, I think it's called the Declaration of the Sworn, is I think . . . Fowler-Moore. Yeah. It's interesting in a number of ways. I'd say I've probably read it more than I've read a two-page . . . I don't know if it was a two-page document in my entire career. What's critical in this case with respect to this declaration is that they refer to one notice. If you look at paragraph 12 and 13, which is her interpretation of the document that is in the record, and it's basically illegible unfortunately, which is on page 171. It's a little confusing because there are two pages, 171 and 172, in the record, but it's the same document. One was introduced by itself, and one was introduced as an exhibit to the declaration. If you look at paragraphs 12 and 13, they say that the record relates to a 90-day notice letter. Next paragraph. The card indicates that a statutory notice of deficiency was mailed on September 11, 2000. In the record, there was one notice of deficiency relating only to the . . . at the end of this declaration, that she referred to notices of deficiency. There's no other indication in the declaration or in the record of a second notice of deficiency. With respect to 92, and it goes back to what you were saying before, I think the most reasonable explanation of what happened was that they did issue a notice of determination for 1992, that it was mailed to the taxpayers, and that's what the green cards relate to. If that were the only case, I think this case would have been resolved long ago. The IRS is trying to . . . Are you saying mailed? Your theory is that two notices for 92 were sent, one to the husband, one to the wife? Yes. I think the reason one might have been sent to the wife is that the 1992 deficiency related to a disallowance of a net operating loss carryback. In 1992, they were not married. All this may be so, but I mean, how do we . . . we're hypothesizing. We are. Isn't the time to have done that was on cross-examination and bringing in other witnesses and trying to establish all these as facts, or at least to put into question? I didn't see you anywhere putting into question the veracity of any of the documents, including the one at 1971-72. I'm not saying . . . I'm not questioning the veracity. I'm just explaining exactly what was said here, and you have to understand what was said here in connection with the evidence here. You're right. We are hypothesizing. Somebody might have asked the tax representative what he got in the mail. There's no indication . . . let me go back. There is a copy of a letter to the then-representative, who's long since ceased to be a representative. That letter refers only to 1992. There's no evidence that that letter was mailed. There's no green card for that letter, but the letter by its terms refers only to 1992. Right, and the record does reflect a subpoena to him by the IRS, but . . . He was out of the country, and our understanding, which I think may be part of the depositions, was that he had no recollection of this. It was, again, by the time this came to light, we're talking about a period of eight, nine years after the notices were supposedly mailed. One of the other . . . But we do know, as a matter of fact, that shortly contemporaneous after the alleged mailing of the notices of deficiencies, your clients wanted to sell their apartment, and then they ended up with a tax lien on the apartment, and the exact numbers that were associated with it were . . . Yes, although, oddly, the 1992 lien was put into place the following year, in 2001. The 1995 lien was not put into place until seven years later. There's no explanation for that. Well, that's not in the record. I mean, you're telling us . . . This Christmas tree is getting all kinds of ornaments hung on it that were not hung on it when Judge Hodges decided the case. I understand that. All of this information is solely within the purview of the United States Internal Revenue Service. The taxpayer doesn't have access to this information. The taxpayer doesn't know what's there. That's why the courts have required the IRS to put together a 3877 notice of deficiencies. Aren't you going back to your argument? Can I help you on this? Isn't the timing of that second tax lien in the record at JA 41 to 46? It's in the record, yes. So it is reflected? The timing of the two liens? Yes, it's in the record. Let me ask you about that 171. Yes. There is a reference at the bottom of the page to the two tax years. I take it . . . Yes. . . . . . . that you believe that was because of the carryback? Yes. You needed to know the 2005 information to support the 1990 . . . I'm sorry, the 1995 information to support the 1992 deficiency. The deficiency resulted from the disallowance of a loss that was previously carried back. Is there deposition testimony talking about what these entries mean? No. So, for instance, there's a place near the top of the document that says, Keeper . . . Keeper 1992. Okay. And what is Keeper? You argue that's keep period? We believe that means keep period. But how do you know that? Did you ask someone from the IRS? We did not. We just got the declaration and worked from that. Going back to the fact that there was a green card with Ms. De La Zada's name on it, I noticed that the Notice of Deficiency copy for 1992, which the IRS did have, has only Mr. Welch's name on it. And what would be the reason that you would think that there would be . . . I'm speculating that because she was a joint taxpayer in the year 1995, for which loss was being used in 1992, that she was entitled to information concerning what happened to that loss. So she would have been given, again speculating, but it's your theory of the case, which may help us conclude that you're right about your basic speculation here that whatever was sent in 1992, there was nothing sent in 1995. Right. But that's also . . . Otherwise, you'd have to speculate that there was a 1995 Notice of Deficiency sent to her for which there is no copy of, for which there's no reference anywhere else other than in collection documents. Right. And what would have been sent to her, you surmise, would be the Notice of a Deficiency that was also sent to him, right? That's the document that would have been enclosed. Or some other explanation of that. Okay. Is there anything in the record that indicates whether it is the norm to send Notices of Deficiency in groups? In other words, would it be normal to send a Notice of a Deficiency for 1992 and a Notice of Deficiency for 1995 in the same package? There's nothing in the record there. I've seen it happen in various ways, but . . . Given the New York office, you wouldn't be surprised. Anything is possible, but as I said, I think it's . . . while we're speculating, it's very hard . . . it takes much more speculation to accept the notion that there's a 1995 Deficiency that was properly mailed for which there's no copy of. Even under . . . that by itself, under the law . . . Let me come back. Earlier, you made a reference which made me sound like you were almost ready to concede 1992. I think the 1992 paperwork is not proper under the case law. But I think there was a 1992. As a factual matter, I don't disagree. I don't want to ask you that. I mean, we're doing an awful lot of casual talking here. You first came in and I thought you were going to say to us that the legal test which we could decide as a matter of law under interpreting the statute, I suppose, they could say that you have to have information that is equivalent to what a 3877 would give you. I think that is what the case law . . . I think that is what the case law says. Other circuits have dealt with cases that had either 3877s or marginally deficient 3877s. There's no case out there that I found that's on all fours with this one. There's no case . . . what I think it's fair to say is not only is the paperwork in this case not as thorough as the ones in which the taxpayer . . . The New York office isn't obligated to follow the 3877 procedure. They're obligated to follow the case law. The case law requires that level of proof. What I'm troubled in this case is that if you accept the declaration, the Manhattan office is saying they can make up whatever rules they want. How many years has the Manhattan office . . . has the Manhattan office still run this way? This is the only case I've ever seen where this argument has ever been made. I can't say . . . I know everything about what's being done. I am over my life. Why don't we hear from the government and we will restore three minutes of rebuttal time to you. Thank you. Ms. Barthel. May it please the court. As the Court of Federal Claims held, there is ample evidence of the mailing, not only of the 1992 Notice of Deficiency, which was only to Mr. Welch, but also of the 1995 Notice of Deficiency, which was to both Mr. Welch and Ms. De La Sada since they had filed a joint return for that year. You know, when you say . . . when you start off by saying there's ample evidence in a case in which the court is obviously struggling, it makes me wonder, well, okay, what if I took away some of the evidence? Would there still be enough? I think if you've got enough for 1995, you're barely there. I can't imagine taking away any of your evidence here and having you still survive. Can you? Well, the truth is that it all fits together as a harmonious and self-supporting whole. That's what I'm wondering about. Starting with why in the world was something sent to her separately from him, other than perhaps Mr. Lipari's speculation that that may have been in connection with 92. He has no evidence whatever to support that. She was, in fact, the taxpayer for one of the two taxpayers for 1995. The two cases had come together as a single case. But she was the second listed taxpayer. Why would . . . if you assume that that second green card was for 95, why would it be addressed to the second listed taxpayer? Why not? If they're at the same address, it was a joint return, there's no reason why not just to list one of them rather than the two of them. Was it a normal practice to put two notices of deficiency in one package? They weren't in one package. They were in two separate packages, hence two different . . . So she only got the 95 and he only got the 92? He only got the 92. She was the only recipient on the card, but she and he together would have been listed jointly on the 95. Section 62.12 makes it clear that can be done. You would ordinarily think that the people making out the address put the first name, you know, Joshua Wells, not Alexander DeSlata. It may just be what you're . . . There's an argument here that if somebody wanted to controvert, I think your case is based almost entirely on the affidavit of the lady, I can't remember her name. Fowler Moore. Right? And she said, I'm telling you, I went and found these two green cards and there's only one reason in the world, and only one reason alone why they're in there, and that's because they were matched up to notices of deficiency. And there are two notices of deficiency in that year, right? Yes. And so that's got to be it. And I would think your argument would be if the taxpayer wants to win, his job was to put on some testimony that undercuts that. For example, if it's true that the IRS sent her a letter to her explaining to her that because of the things that went on in 92, there's going to be an adjustment on her tax return. Not a notice of deficiency, something else. He could have asked that question, right? For what purpose have you ever hung a green piece of paper on any other piece of mail other than a notice of deficiency? They're not commonly . . . For instance, the transmission letter for the 92, the copy of the 92 notice of deficiency that went to Mr. Welch's attorney, that was not sent by certified mail. That was just sent as . . . How do we know that? Because it says it's not right on the letter. It doesn't have a certified mail stamp. Is that in the record? Yes, it is. Where? Please. Page 188. It is stamped September 11, 2000. What page? It's the joint appendix, page 188. 180? 188. Okay, this is a letter to him? Yes, this was a transmittal letter. A copy of the notice of deficiency for 1992 was also sent to Mr. Roseman. This is 92? But there's no letter relating to 95? There's not, no, Your Honor. And, well, I know this is basic, but this is the government's burden, right? So whatever else he might have asked, it's your burden. It's only the government's burden, Your Honor, if the taxpayers present some evidence that they didn't get or did not timely get. Well, they did. And they did. But there's no evidence they did not get it. There's only Mr. Welch saying that he didn't remember getting it. He also didn't remember suffering a $1.3 million loss. He didn't remember getting a $77,000 tentative refund. His memory, perhaps, is not the most dependable, at least not in this case. All right. But on the Fowler-Moore affidavit, you kept saying in your brief that what she said is the only reason we would have ever sent a certified mail to them would be because of setting a notice of deficiency. But that's not really what she says. All she says is that would have been the only certified mail sent to them in 2000. She says we've got two cards, so that would have been the only certified mail. She doesn't really say make the leap that you argue in your brief. Which paragraph? Paragraph 7. But she went to the file cabinet that is dedicated to notice of deficiency. So what she's saying here is there wasn't anything else in the file cabinet. So there were only two cards, so they only sent two things. But she doesn't say they had to have been two separate notices of deficiency. That's not what she says in her affidavit. Your Honor, there is no evidence of anything else that was sent to them. And her knowledge of what was done in the office at the time is about as thorough as one can imagine for anybody to have had. And she, looking at this evidence, said that was the notice of deficiency. That was such a misledive. She said that her job was to keep track of mailing lists and notices of deficiency lists. Why weren't those lists not proffered? She says that at the time, the Manhattan office did not use the 3877 type of list for this purpose. Right, but she said she had a job. Her job included keeping track of lists, but there were no lists proffered. Not for this purpose. She says for this purpose, what they used were the certified mailing cards from 3811. Now let me turn you to 171 in that computer card. And it says in the fourth column over, it says keep her. We don't know what that means. There's no evidence in the record as to what that means. What we have, however, are the names of both taxpayers here, since it was a joint case that had been sent to appeals for the two years. The notices of levy were for both years. The notices of where they could contest the levy were for both years. This was treated as a single case. The appeals memorandum recommending and then agreeing to the sending of the notices of deficiency was for both years. The sums are the same on all of these documents for both years. They're all perfectly coherent together. In looking at all the case law, because there's a lot of case law on this topic, and it seems to be a bit all over the board, but one of the older cases comes out of the New York office, and in that case, it talks about the New York office using the 3877. So they just decided to stop using it? I have no idea as to what was used at different time periods. At this time period, we have Ms. Fowler-Moore's testimony that what was used was 3811, and not 3877. Would you agree with the proposition that there's never been a ruling in favor of the government where there wasn't at least either a notice of deficiency or a 3877 that could be produced? I don't believe that's quite true. There are some tax court cases that have different sorts of, like the big case, I'm sorry? The big case BYK we cite, I believe, has different sorts of evidence and not the sort of certified mailing list. But no one has ever ruled was absolutely necessary. I can't hear you. No one has ever ruled that that list was necessary. What do you make of the point raised by Mr. Lopari that paragraphs 12 and 13 of Ms. Fowler-Moore's declaration refer to the A letter being sent? Is that just, is she referring to them one at a time? I mean, it does look a bit odd in context. She may be referring to them one at a time. The card itself shows, this is on page 171, a stat date for the two different years of 5-30-01, which is what happens if two notices of deficiency are sent out. I'm sorry, I missed the beginning of your sentence. What did you say? We've got a stat at the bottom of that card. Stat date. Where are you? What page? Is that in the record? Yes, it is. Page 171. I know, but you said that there's nothing in the record that tells me what keep her means. Is there anything in the record? This is her explanation. Ms. Fowler-Moore explains about that. But again, she refers to a notice of deficiency. But it clearly shows two different stat dates, and the dates would not have been extended had there not been a notice of deficiency for each of those years. Then the stat date is, of course, what's critical here. Right. Let me ask you the same question I asked Mr. LaPari about the procedural posture of this case. This was on summary judgment, but the evidence was all before the trial judge. Now, do you view this, his determination at the end of his opinion, in which he says, if I can find it, the evidence presented establishes that the service mailed the statutory notices on September 11th for both years, on September 11th, 2000, as a finding of fact? It's a finding, yes, that is sufficient to support summary judgment, a finding of fact sufficient because that's what he granted. Well, you know, when you've got a court that doesn't have a set other than by itself and no jury, sometimes summary judgments and dispositions on the ultimate merits merge together. And what I'm asking really is, if this is a purely a summary judgment question, if what he is saying is that the government is entitled to summary judgment, that there is no dispute of fact that any fact finder could find any other way than that these two were mailed, that's one standard, which would be, I think, much more difficult for you to meet. It's another standard to say that I've seen all the evidence, no one is offering any more evidence, no one wants to call witnesses, no one wants a full trial on this, and therefore I'm sitting in effect as a finder of fact, and I find that the mailing was made, that's a more liberal standard for you to meet. Understood? I do. Okay, which is it in this case? You're suggesting to me by saying that this is a summary judgment disposition that maybe it's the former rather than the latter. I think it is more the former than the latter because he's saying that this is adequate to support the government's position, and there's nothing that has shaken it. There's nothing contrary. Is he saying the facts as I have related them are uncontested? They are uncontested, yes, Your Honor. And so the lady saying this, I go there and I find these two cards and they wouldn't be there but for a notice of deficiency being sent, he accepts that as a fact. Too late to challenge it. The speculation of this letter to Mr. Losada doesn't come until a reply brief. It's what he wasn't contested. Okay. Very well. We'll hear from Mr. Lopari then if there's any rebuttal. Thank you. Three minutes, Mr. Lopari. I don't have a whole lot left to say. The reference to the mailing to Mr. Roseman, that neither the letter to Mr. Roseman nor the letter, the cover page of the notice of deficiency talk about certified mailing. So I'm not sure what you gained from the fact that the letter to Mr. Roseman doesn't refer to certified mailing. But again, the point of all the case law is that the IRS has the ability to prove what they did. If you go through a lot of these cases, they're extremely long. There's a tremendous amount of information either by way of testimony or by way of affidavits that the IRS could have put in. We don't know what they did. We don't know how they did it. So the fact that they didn't put in information, somehow we should have figured out how to get that into evidence. I'm not sure how we could have done that. They're the ones who know. They're the ones who know which people were involved. They're the ones who know how they maintain their own records. As Judge O'Malley noted, it is a little peculiar for Ms. Moore to say that her duties were to manage the certified mailing lists and have produced no certified mailing lists. Again, the issue of what happened in the Manhattan office is very hard to parse. But what they're basically saying in this case is that even though we don't have the evidence that we can put in to explain what happened, you should hypothesize that we did what we wanted to do, which is to issue two notices of deficiency. And I don't see how this court can do that without significantly changing the body of law that's out there. Thank you. Thank you. We thank both counsel. The case is submitted.